**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**FAHMI NASHIR,**

**Plaintiff,**

**v.**

**18-CV-767-HKS**

**NANCY A. BERRYHILL, Acting**
**Commissioner of Social Security,**

**Defendant.**

_____

## DECISION AND ORDER

Plaintiff, Fahmi Nashir, brings this action pursuant to the Social Security

Act ("the Act") seeking review of the final decision of Acting Commissioner of Social

Security (the "Commissioner"), which denied his application for a period of disability

insurance benefits ("DIB") under Title II of the Act.  Dkt. No. 1.  This Court has

jurisdiction over this action under 42 U.S.C. § 405(g) and the parties have consented to

the disposition of this case by the undersigned pursuant to 28 U.S.C. § 636(c).  Dkt. No.

12.

Both parties have moved for judgment on the pleadings pursuant to Federal Rule

of Civil Procedure 12(c).  Dkt. Nos. 8, 10.  For the reasons that follow, Plaintiff's motion

(Dkt. No. 8) is GRANTED and the Defendant's motion (Dkt. No. 10) is DENIED.

**BACKGROUND**

On October 20, 2014 Plaintiff protectively filed an application for DIB with the Social Security Administration ("SSA") alleging disability since September 3, 2013[1] due to: neck injuries, headaches, shoulder pain, and high cholesterol. Tr.[2] 200-204, 224-232. On May 12, 2015, Plaintiff's claim was denied by the SSA at the initial level and he requested review. Tr. 78-82. On May 30, 2017[3] and September 12, 2017, Plaintiff appeared with his attorney and testified along with a vocational expert ("VE") before Administrative Law Judge, Paul Georger ("the ALJ"). Tr. 43-67, 33-42. On October 20, 2017, the ALJ issued a decision finding Plaintiff was not disabled within the meaning of the Act since October 14, 2013, his amended alleged onset date. Tr. 12-32. Plaintiff timely requested review of the ALJ's decision, which the Appeals Council denied on May 14, 2018. Tr. 1-6. Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision. Dkt. No. 1.

**LEGAL STANDARD**

**I.    District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by

---

[1] Plaintiff amended his alleged disability onset date to October 14, 2013. Dkt. No. 7 at 287.
[2] References to "Tr." are to the administrative record in this matter. Dkt. No. 8.
[3] The VE was unable to testify during the initial hearing on May 30, 2017, therefore the ALJ arranged a supplemental hearing on September 12, 2017 for the VE to testify. Tr. 15.

substantial evidence.  42 U.S.C. § 405(g).  "Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted).  It is not the Court's function to "determine *de novo* whether [the claimant] is disabled."  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## II.    Disability Determination

An ALJ must follow a five-step process to determine whether an individual is disabled under the Act.  *See Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity.  *See* 20 C.F.R. § 404.1520(b).  If so, the claimant is not disabled.  If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities.  20 C.F.R. § 404.1520(c).  If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled."  If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of

Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to demonstrate that the claimant "retains a residual functional capacity to perform the alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

## DISCUSSION

### I. The ALJ's Decision

The ALJ's decision analyzed Plaintiff's claim for benefits under the process described above. First, the ALJ found Plaintiff met the insured status requirements of the Act through September 30, 2019. Tr. 17. At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 14, 2013,

the amended alleged disability onset date. *Id.* At step two, the ALJ found Plaintiff has the following severe impairments: degenerative disc disease of the cervical spine with cervical radiculopathy. Tr. 18. Also, at step two, the ALJ observed Plaintiff has the following non-severe impairments: headaches, shoulder pain, brachial neuritis, knee pain, myofascial pain syndrome, myalgia, hyperlipidemia, abdominal pain, gastroesophageal reflux disease ("GERD"), mastoiditis, otalgia, sinusitis, chest pain, dyspnea, tobacco use disorder, smoking cessation, depression, and anxiety. Tr. 18-20. At step three, the ALJ found that these impairments, alone or in combination, did not meet or medically equal any listings impairment. Tr. 20.

Next, the ALJ determined Plaintiff retained the RFC to perform light work.[4] Tr. 20-25. Specifically, the ALJ found Plaintiff can lift, carry, push and/or pull twenty pounds occasionally and ten pounds frequently. Tr. 20. The ALJ also found Plaintiff can stand and/or walk for six hours in an eight-hour workday; and sit for six hours in an eight-hour workday. *Id.* Lastly, the ALJ concluded Plaintiff can occasionally reach, climb, balance, stoop, kneel, crouch, and crawl; and can tolerate occasional exposure to moving mechanical parts. *Id.*

---

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

At step four, the ALJ relied on the VE's testimony and concluded Plaintiff was incapable of performing his past relevant work as a "Crane Operator." Tr. 29-30. At step five the ALJ considered Plaintiff's age, education, work experience, and RFC, and relied on the VE's testimony in finding Plaintiff capable of performing other work that existed in significant numbers in the national economy. Tr. 25-26. Specifically, the ALJ found Plaintiff could perform the following jobs: "Counter Clerk," "Usher," and "School Bus Monitor." Tr. 26. Accordingly, the ALJ found Plaintiff was not disabled under the Act from October 14, 2013, through October 20, 2017. Tr. 27.

## II.    Analysis

Plaintiff argues that remand is warranted because:  (1) the ALJ's step three finding is factually inaccurate; (2) the ALJ's evaluation of the medical opinion evidence is unsupported by substantial evidence; and (3) improperly evaluated Plaintiff's subjective complaints.  Dkt. No. 8 at 1.  The Commissioner contends the ALJ's decision is supported by substantial evidence and should be affirmed.  Dkt. No. 10 at 7. This Court finds remand is warranted where the ALJ's step three finding is unsupported by substantial evidence for the reasons that follow.  Because remand is warranted on this basis, this Court need not address Plaintiff's remaining arguments.

### (1) The ALJ's step three finding that Plaintiff did not meet listing 1.04A is unsupported by substantial evidence.

At step three of the disability analysis, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a Listings impairment. 20 C.F.R. § 404.1520(d).  If the impairment meets or medically equals the criteria of a

listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled.  If not, the ALJ determines the claimant's RFC and proceeds to the next step of the sequential disability analysis.  20 C.F.R. § 404.1520 (e)-(f).

To satisfy Listing 1.04A, a claimant must make a threshold showing that he suffers from a "Disorder of the spine (e.g., herniated nucleus pulpous, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture) resulting in compromise of a nerve root (including the cauda equina) or the spinal cord." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04. A claimant must also demonstrate

[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine) ....

*Id.*

At step three, the ALJ concluded Plaintiff's degenerative disc disease of the cervical spine does not meet or medically equal the requirements of Listing 1.04A. Tr. 20.  The ALJ reasoned that although objective medical evidence demonstrates Plaintiff suffers from degenerative disc disease of the cervical spine; there is no evidence of root compression with sensory and reflex loss, along with positive straight-leg raising tests; and no evidence of spinal arachnoiditis or lumbar spinal stenosis resulting in an inability to ambulate effectively.  Tr. 20.

As an initial matter, this Court notes the ALJ's step three conclusions regarding straight leg raising tests, spinal arachnoiditis, and lumbar spinal stenosis, all pertain to the lumbar spine, which is not at issue in this matter whereas Plaintiff suffers from the following severe impairments of his cervical spine: degenerative disc disease of the cervical spine with cervical radiculopathy. Therefore, the ALJ's conclusions regarding Plaintiff's lumbar spine are inapposite to determining whether Plaintiff's cervical spine impairments meet the requirements of Listing 1.04A.

Plaintiff contends the ALJ's conclusion is unsupported by substantial evidence because the ALJ failed to discuss relevant medical evidence in summarily concluding there was "no evidence" to support that Plaintiff's nerve roots and/or spinal cord were compromised in satisfaction of the requirements of Listing 1.04A. Dkt. No. 8 at 16-20. The Commissioner contends that the ALJ considered all of the evidence identified by the Plaintiff and that it does not demonstrate Plaintiff met all of the Listings requirement for a continuous 12-month period or that it was per se unreasonable for the ALJ to conclude otherwise. Dkt. No. 10 at 8-9. This Court finds the Commissioner's contentions and the ALJ's step three finding are belied by the record, and that remand is warranted.

"Although we have cautioned that an ALJ 'should set forth a sufficient rationale in support of his decision to find or not to find a listed impairment,' the absence of an express rationale for an ALJ's conclusions does not prevent us from upholding them so long as we are 'able to look to other portions of the ALJ's decision and to

clearly credible evidence in finding that his determination was supported by substantial evidence.'" *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 112 (2d Cir. 2010) (quoting *Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982).

Although the ALJ subsequently referenced Plaintiff's 2013 cervical spine MRI, acknowledging the objective medical report revealed degenerative changes including disc herniations and mild spondylosis; the ALJ notably omitted any mention of the cervical spinal cord impingement at C5-C6 and slight cord impingement at C4-C5, which were also found on Plaintiff's 2013 MRI. Tr. 22. Furthermore, the ALJ entirely ignored Plaintiff's 2015 MRI, which displayed broad based disk herniations at C4-5, C5-6 and C6-7, with associated central canal and bilateral foraminal stenosis.[5] Tr. 498. This objective evidence clearly supports Plaintiff's contention that he suffers from nerve root compression, the first requirement for Listing 1.04A. *See Kerr v. Astrue*, 2010 WL 3907121, *5 (N.D.N.Y. 2010).

The ALJ also observed that neurosurgeon James Egnatchik, M.D. ("Dr. Egnatchik"), declined to order surgery for Plaintiff due to an absence of neurological findings. Tr. 22. Here, this Court notes that Dr. Egnatchik examined Plaintiff once in 2014, finding limited range of motion in extension of Plaintiff's cervical spine and

---

[5] "Spinal stenosis is the narrowing of one or more bony openings (foramina) in the vertebrae of the spine. When spinal stenosis occurs in the spinal canal, it is called central canal stenosis and may cause compression of the spinal cord." https://www.spine-health.com/glossary/central-canal-stenosis (last visited 3/23/2020). "Bilateral foraminal stenosis details when the spinal nerve root is compressed on both sides due to narrowing of the foramen that may be caused by an enlarged joint, a collapsed disc space or a foraminal herniated disc…. [B]ilateral foraminal stenosis may occur in the cervical spine or the lumbar spine." https://www.spine-health.com/glossary/bilateral-foraminal-stenosis (last visited 3/24/2020).

concluding that although a three-level anterior surgical fusion may ultimately be necessary to treat three cervical disc herniations observed on Plaintiff's 2013 cervical spine MRI, the doctor recommended Plaintiff try to avoid surgery as long as possible as it would likely permanently disable him from his career as a crane operator. Tr. 416. The doctor encouraged Plaintiff to return to physical therapy to try to get in shape and possibly eventually return to work. *Id.* The ALJ also referenced treatment notes from Plaintiff's pain management specialist Nikita Dave, M.D. ("Dr. Dave"), noting that in 2014, Dr. Dave observed Plaintiff's recent EMG study findings were normal despite Plaintiff's ongoing reports of pain and difficulties with physical activities. Tr. 22. Here, this Court notes that the record is void of an EMG study performed in 2014, outside of the reference in Dr. Dave's treatment notes, and that Dr. Dave noted he did not have the films from Plaintiff's 2013 cervical spine MRI although he noted three level disc herniation. Tr. 419. Dr. Dave also observed severe stiffness and pain in Plaintiff's cervical spine, both trapezi and midline, as well as in the paraspinal region with daily headaches; and occasional bilateral upper extremity shooting pain, numbness, and tingling in both hands. *Id.*

The ALJ generally observed that since October 14, 2013, Plaintiff's chronic pain and symptoms have generally responded well to conservative treatment including: medication management, activity modification, home exercises, chiropractic care, physical therapy, injections, the use of a TENS unit and traction collar, and treatment with pain management specialists. *Id.* However, Plaintiff's decision not to pursue surgical intervention for his cervical disc herniations does not negate his

suffering from his impairments as reflected by his consistent complaints of pain extending into his bilateral shoulders, arms, hands, and headaches.  Tr. 305, 381, 399, 406, 419, 446, 493, 517, 649-667, 671-674, 678.  Nor does it negate Plaintiff's complaints of reduced range of motion in the cervical spine, weakness in his upper extremities, and sensory and reflex loss throughout the relevant period.  Tr. 306, 381-82, 406, 413, 416, 421, 423, 427, 452, 457, 517, 619, 627.  All of which tend to support Plaintiff's contention that the remaining elements of Listing 1.04A are satisfied including neuro-anatomic distribution of pain and motor loss of the cervical spine accompanied by sensory or reflex loss.

Therefore, given the evidence cited above, this Court "cannot conclude that the ALJ's determination is supported by substantial evidence because he failed to explain his reasoning and there is conflicting medical evidence in the record." *See Loescher v. Berryhill*, 2017 WL 1433338, *3 (W.D.N.Y. 2017); *see also Yeomas v. Colvin,* 2015 WL 1021796 at *19 (W.D.N.Y. 2015).  Plaintiff is clearly owed a more substantive explanation of why he did not meet the Listing 1.04A.   If, on remand, Plaintiff is once again found not disabled at step three, the ALJ must provide an explanation of what criteria from Listing 1.04A Plaintiff failed to meet in consideration of all of the evidence regarding his severe impairments of the cervical spine.  Specifically, the ALJ is directed to address all conflicting evidence and provide reasons for discounting that evidence which he rejects.

**CONCLUSION**

For these reasons, Plaintiff's Motion for Judgment on the Pleadings (Dkt. No. 8) is GRANTED.  Defendant's Motion for Judgment on the Pleadings (Dkt. No. 10) is DENIED.  The Clerk of Court shall enter judgment and close this case.


**SO ORDERED.**

DATED:     Buffalo, New York
             March 25, 2020


*S/ H. Kenneth Schroeder, Jr.*
**H. KENNETH SCHROEDER, JR.**
**United States Magistrate Judge**